UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                    )
DANIEL C. BRIGGS,                   )
        **Plaintiff**,              )
                                    )
        v.                          )        C.A. No. 12-11795-DJC
                                    )
BOAT/U.S., INC. and SOCIETY OF      )
ACCREDITED MARINE SURVEYORS,        )
INC.,                               )
        **Defendants.**             )
_____)

## FIRST AMENDED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES; JURY TRIAL DEMAND

1.      Plaintiff Daniel C. Briggs ("Briggs") brings this action for preliminary and permanent injunctive relief, seeking to compel the Defendant Society of Accredited Marine Surveyors, Inc. ("SAMS®") to reinstate his membership in that organization, and to force Defendant Boat/U.S., Inc. ("Boat/U.S."), an insurer of marine vessels, to resume accepting marine surveys performed by Mr. Briggs.[1]

2.      In addition, and/or in the alternative, Mr. Briggs seeks damages against both defendants for their concerted and separate actions to destroy his professional reputation and ability to earn a living as a marine surveyor and in related fields.

3.      Mr. Briggs is a respected resident of Mattapoisett, Massachusetts, who resides in a home on North Street in that town – just yards from the ocean -- that was built by the noted shipbuilder, John Dexter.  Briggs's Great-Great Grandfather was a Whaling Captain in the area in the 1800s.

_____

[1]   In addition to the facts stated herein, Plaintiff incorporates in full the Affidavit of Daniel C. Briggs in Support of Motion for Preliminary Injunction, filed herewith, by reference.

4.      Mr. Briggs is a former boat-builder and boat captain himself, with forty years of experience in designing, building, repairing, restoring and captaining marine vessels. He has acted as a consultant on the construction, repair and restoration of marine vessels, and has been an investigator, consultant and/or expert witness (both in depositions and at trial) in rendering opinions as to the causes and effects of marine disasters and sinkings.

5.      For the past twenty years, Mr. Briggs has worked virtually full-time as a marine surveyor.

6.      Marine surveyors are hired to provide clients with boat appraisals, insurance surveys, and evaluations of the condition of marine vessels.

7.      The surveys make the purchase and sale of marine vessels possible, are often required before a boat may be insured, and facilitate the settlement of insurance claims following the occurrence of damage to a boat, among other functions.

8.      Virtually all those in need of marine surveys – and particularly the insurance companies that are involved in a majority of such circumstances – require that the surveyor providing them hold professional accreditation with one of two accrediting bodies:  Defendant SAMS or the National Association of Marine Surveyors ("NAMS").

9.      Prior to June 27, 2012, Mr. Briggs had been a respected, dues-paying member of SAMS for at least seventeen years.

10.      By trumping up an innocent misunderstanding among Mr. Briggs, his client, and Boat/U.S. into putative SAMS Ethics Code violations, the Defendants conspired to strip Mr. Briggs of his SAMS accreditation, destroy his reputation in the marine industry, and render him unable to make a living in the only sector of the economy in which he has marketable experience.

11.     Defendants did so by way of improper motive and means, by way of Boat/U.S.'s libel and slander, and through SAMS' violations of Mr. Briggs' constitutionally-derived quasi-due-process "fair procedure" rights, and Massachusetts' Chapter 93A.

12.     In remedy, Mr. Briggs seeks preliminary and permanent injunctive relief, including (without limitation) reinstatement of his SAMS accreditation and membership with all associated privileges, an order requiring Boat/U.S. to resume accepting his marine surveys, and monetary damages for the irremediable harm done to his reputation, professional standing, and earning capacity by the misconduct of both defendants.

## THE PARTIES

### Plaintiff Daniel C. Briggs

13.     Plaintiff Daniel C. Briggs is a private citizen over the age of majority, and residing at 3 North Street, Mattapoisett, Plymouth County, Massachusetts.

14.     Mr. Briggs is a marine surveyor with over thirty (30) years of experience in that profession to go with many years in other marine-related industries, including boat-building, captaining of marine vessels, and maritime education.

### Defendant Boat/U.S., Inc.

15.     Defendant Boat/U.S., Inc. is a corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business at 880 South Pickett Street, Alexandria, Virginia.

16.     Boat/U.S. is a for-profit national boating club that sells marine insurance to its members and other boaters.

17.     After Mr. Briggs submitted – through his client Ron Hirschberg – a draft survey of Mr. Hirschberg's boat to Boat/U.S. so it might begin the insurance application

3

process, Boat/U.S. submitted a "Complaint" about Briggs to SAMS containing knowingly false assertions that he "misrepresented" the survey to be final and complete.

### Defendant SAMS®, Inc.

18.     Defendant Society of Accredited Marine Surveyors, Incorporated, ("SAMS®" or "SAMS") is a corporation organized and existing under Florida law, with a principal place of business at 7855 Argyle Forest Boulevard, Suite 203, Jacksonville, Florida.

19.     SAMS is an accrediting body for the marine surveyor profession, which has been in existence since roughly 1987.

20.     Disregarding Mr. Briggs's account of the events involving the Boat/U.S. draft survey, and in violation of its own procedural rules and fundamental fairness, SAMS conspired with Boat/U.S. to suspend and then terminate Mr. Briggs's membership with the organization between April and June 2012.

### JURISDICTION and VENUE

21.     This Court has personal jurisdiction over Defendant Boat/U.S. (without limitation) pursuant to the Constitutional "minimum contacts" standard and under Mass. Gen. L. c. 223A, § 3(a)-(d), (f), because (without limitation) its tortious acts against Mr. Briggs arose from its transacting business in Massachusetts with his customer/its insured, Ron Hirschberg, and because it regularly solicits and does business in the Commonwealth, derives substantial revenues from such business, maintains an agent for service of process in Massachusetts.

22.     Boat/U.S. is also registered to do business in the Commonwealth.

23.     Defendant SAMS® is subject to the Court's jurisdiction (without limitation) pursuant to the Constitutional "minimum contacts" standard, and under Mass.

Gen. L. c. 223A, § 3(a), (b) and (c), because it has numerous members with whom it routinely does business in Massachusetts, its tortious conduct in suspending and terminating Mr. Briggs arose from its activities with Massachusetts members, and was largely comprised of communications sent to Mr. Briggs in Massachusetts, and because it derives substantial revenue from the accrediting and other professional services it provides to Massachusetts members in the Commonwealth.

24.     Venue is appropriate pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events at issue in this action took place in this judicial district.

## FACTS COMMON TO ALL COUNTS

25.     Defendant Boat/U.S. is a boating organization which issues marine insurance to boat owners.  Like many other such insurers, Boat/U.S. requires boat owners seeking insurance with it to provide it with a survey before it will issue them a marine insurance policy.

26.     Such a survey provides the insurer with the specifications and measurements for the vessel, including identifying its designer, type, year of manufacturer, and boat-builder, and further describes the equipment and systems in place on the boat.

27.     The survey describes the condition of the boat, identifies any components needing replacement or repair, and provides an estimate of the vessel's value.

28.     In 2005, a man named Ronald Hirschberg, from Weston, Massachusetts, hired Mr. Briggs to perform an insurance survey on his 42 foot sailboat, Changes in Latitude.

29.     In April 2012, Hirschberg again contacted Mr. Briggs, and told him that he needed the boat re-surveyed because he was switching insurers, to Boat/U.S.

30.     Mr. Briggs attempted to inspect the vessel at a boatyard in Marion, Massachusetts, but it was hemmed in by several other boats, which could not immediately be moved.

31.     Briggs was able only to inspect the underside of the boat and the rig – the external drive mechanism.

32.     The boatyard employees stated to Briggs that the boat was in excellent condition, would be accessible within a week or two, that it had been professionally maintained and serviced since the last survey, in 2005, and that the boat had not even been used the previous year.

33.     Briggs reported back to Mr. Hirschberg concerning the circumstances of the boat at the boatyard, that he was able to inspect only the underside and rig, and that he could not complete the survey until he could get onto the boat.

34.     Mr. Hirschberg confirmed the details concerning the vessel's condition and maintenance, stated that he understood the survey could not be completed, but reiterated that he was receiving pressure from his insurer to obtain a survey as soon as possible.

35.     Briggs believed at the time that Hirschberg was working through an insurance agent to purchase a new policy.

36.     Briggs stated to Hirschberg that he could provide him with a ***draft*** survey ("Draft Survey") that would have very little information changed from the 2005 survey, which Hirschberg could use for the sole purpose of showing his insurance agent that the survey was underway, not completed.

37.     Briggs stated that this might at least allow Hirschberg's agent to get the insurance application process started.

38.     Briggs made clear, and Hirschberg understood, that the Draft Survey was not to be presented as a "final" survey, that Briggs had not completed his inspection of the boat, and that the agent or insurer needed to understand that the Draft Survey was not being represented to be complete.

39.     Briggs's usual practice was to submit final surveys on his letterhead and with his signature and SAMS® seal.

40.     On April 13, 2012, Briggs e-mailed a Draft Survey to Hirschberg which was not signed, was not on Briggs's business letterhead.  He made clear in the email that he had not completed the inspection or survey, stating "I will get aboard the boat ASAP." See E-mail Stream D. Briggs/R. Hirschberg, April 13, **Ex. 2** to Briggs Aff.

41.     Hirschberg submitted the Draft Survey to Boat/U.S. by e-mail on April 19, 2012, but failed to advise them that the survey was a draft, preliminary survey, that Briggs planned to complete it as soon as he was able to access the boat, or that it was being provided only for the purpose of getting the application/underwriting process started. See E-mails, Briggs/Hirschberg, **Ex. 2** to Briggs Aff.; Hirschberg Aff. at ¶¶ 13-15.

42.     A few days later, "Cheryl" at Boat/U.S. left a message asking Briggs to call her concerning the Draft Survey.

43.     Briggs returned her call several times, and left a message explaining that: the Draft Survey was not intended to be provided as "final;" that he had provided it to Mr. Hirschberg only to show his insurer that the survey was underway; that the boat had been well-maintained and was unchanged since the last survey; and that he expected to complete the survey in the next couple of weeks, once he was able to get on the boat.

44.     Notwithstanding its firm understanding that the Draft Survey was never intended to be represented as complete or final and instead of calling Briggs to discuss the matter, Boat/U.S. set on a course to destroy Briggs's relationship with Mr. Hirschberg, his professional reputation in the marine industry, and his ability to make a living as a marine surveyor.

45.     Boat/U.S. first contacted Mr. Hirschberg, telling him that they would never again accept a survey from Briggs, that they had had past problems with Mr. Briggs as a surveyor, that his submission of the Draft Survey was "unethical," and that he should not pay Briggs for his work. See Hirschberg Aff. at ¶ 17.

46.     Boat/U.S. also directed Mr. Hirschberg to choose a different surveyor and provided him a list of "approved" surveyors, which included Jeffrey Gonsalves, a young surveyor from Briggs's area whom he had helped out when he was just getting started.

47.     Boat/U.S. had never complained to Mr. Briggs about his work in the past, and provided Mr. Hirschberg with no details concerning "past issues" with him.

48.     When Briggs learned that Boat/U.S. had directed Hirschberg to choose another surveyor, he again contacted the company to discuss the matter, attempting to leave a voicemail message for the Senior Vice President for Underwriting.

49.     When he received a call back from Bruce Spahr, an Underwriting Manager, Briggs reiterated that he had advised Hirschberg the survey was not final, and that he never intended it to be viewed or used as such.

50.     Spahr refused to believe it, calling Briggs's conduct misrepresentation, and "unethical."

51.     In the meantime, Boat/U.S. went forward with its character assassination.

**Boat/U.S.'s "Complaint" to SAMS**

52.     Sometime between April 27 and May 4, 2012, Boat/U.S. contacted

SAMS® and lodged an oral "complaint" against Briggs, stating that he they had had

(unexpressed and unidentified) past problems with the content of Mr. Briggs's survey

reports, that he had committed unethical conduct, and that he had misrepresented an old

survey of the Changes in Latitude as a final, complete survey.

53.     Boat/U.S. knew, or should have known, that none of this was true.

54.     Boat/U.S. intended, knew, or should have known, that submitting this

"complaint" to SAMS® would:  (i) cause SAMS® to suspend and/or terminate Mr.

Briggs's membership; (ii) cause irreparable harm to Mr. Briggs's professional reputation,

including by causing past, current, and future clients from wishing to do business with

Mr. Briggs; and (iii) damage and/or destroy Mr. Briggs's ability to earn a living as a

marine surveyor, or otherwise in the marine industry, in the future.

55.     Boat/U.S. submitted no written "complaint" to SAMS® at that time.

56.     On May 7, 2012, Mr. Briggs received a letter from Joseph Lobley of

SAMS® (then Vice President, now President), stating that: (i) his membership with

SAMS® was indefinitely suspended because of the submission of an "Ethics Complaint"

by Boat/U.S.; (ii) the "Complaint" alleged multiple, unidentified, violations of SAMS®

Code of Ethics; (iii) the suspension precluded him from use of the SAMS name or his

accreditation seal, receipt of referrals from SAMS, coverage under the SAMS liability

policy, or use of the SAMS name in marketing, advertising, on surveys, or elsewhere.

See Temporary Suspension Letter, **Ex. 4** to Briggs Aff.

57.     The letter failed to:  (a) state what these "Code of Ethics" violations were;

(b) did not otherwise identify or explain what the basis for the Boat/U.S. complaint was;

or (c) include with it any written complaint from Boat/U.S. or any documents bearing on the suspension. See id.

58.    The Temporary Suspension Letter stated that the suspension would continue "pending a full report by the Investigation Committee and subsequent review by SAMS® Board of Directors."  The only recourse provided to Briggs was the "appeal" of the decision at the SAMS Board of Directors annual meeting, to be held in Baltimore on June 13, 2012.

59.    The suspension violated SAMS® Rules of Practice, Suspension and Termination Policies, and constitutional and fundamental rules of fairness, because it was invoked before SAMS®: (i) had even advised Briggs of the "Code of Ethics" rules he was alleged to have broken; (ii) solicited or heard Briggs's, or any other witness's (e.g., Hirschberg's) explanation of the events in question, aside from Boat/U.S.; (iii) had received any kind of "formal written complaint," or any "well-documented grievance" as required by SAMS® Suspension and Termination rules prior to suspension and then termination of membership.

60.    Following the suspension, Briggs called Lobley several times in an attempt to discuss the suspension, and tell his side of the story.  Lobley refused to discuss the matter, stating in an email that it would be "inappropriate" to do so.

61.    Briggs subsequently wrote the Board of Directors to request an appeal hearing, and in a letter dated May 21, 2012 (the "May 21 Letter"), was advised that he would be heard on June 13, 2012, at the annual meeting, and that he would be provided a copy of the "full report" of the Investigation Committee at or before that time. See May 21 Letter, **Ex. 9** to Briggs Aff.

62.     The May 21 Letter still failed to advise Briggs of what Code of Ethics violations he had allegedly committed, but provided him the alleged "written complaint" and other putative documentary evidence from Boat/U.S. of the alleged "serious" ethics violations.

63.     The "written complaint" was dated May 9 - five days **after** SAMS sent Briggs the letter advising of the "temporary suspension" for "multiple violations of SAMS Code of Ethics" of a "very serious nature," and consisted of a cryptic, mistake-riddled, two-paragraph letter from Boat/U.S. to Joe Lobley that was not faxed to SAMS® until the day it was sent on to Briggs – May 21, 2012. See "Complaint" Letter, **Ex. 9** to Briggs Aff.

64.     The other written documentation amounted to three pages from Briggs's Draft Survey with Boat/U.S. handwritten notations on it.  The documents' fax lines showed that the pages had been sent to SAMS on April 27 or April 30, 2012, and that they were just three pages from a fax sent by Boat/U.S. to SAMS of at least 15 pages.

65.     The "complaint" letter, written by Bruce Spahr, contained vague, unsupported statements disparaging Briggs's past work, and knowingly untrue statements concerning the Draft Survey, including that:  (i) SAMS was reporting an "urgent" matter, when the events in question had occurred between two and three weeks prior; (ii) Briggs's reports routinely had "shown to have errors and consistently lack details compared to other SAMS surveys we review," with no details or explanation provided; (iii) Briggs had "***submitted a final draft*** [of the Hirschberg survey] ***to the owner with no indication that he never went aboard the vessel***;" and (iv) that Briggs's submission of the Draft Survey to Hirschberg and to Boat/U.S. – allegedly without advising that it was not complete – was a "misrepresentation."

66.     Each of these statements (without limitation), and in particular, the final two assertions, were untrue; Spahr/Boat/U.S. knew or should have known that they were untrue; and were intended, or would have the inexorable effect of permanently damaging Briggs's standing with SAMS®, his reputation as a marine surveyor and otherwise in the marine industry, and his ability to earn a living as a marine surveyor or in related fields.

### The "Appeal" – The Kangaroo Court

67.     SAMS® Termination Policy requires that after a "formal written complaint" is filed, an "Investigation Committee" is formed and must conduct an investigation, make recommendations to the Ethics Committee Chairman and President, and submit an "Investigation Committee Report."

68.     The President must then inform the "Accused Member of the Committee's recommendation," and the member may then request a "Formal Hearing at the next Board of Directors meeting."

69.     At the formal hearing, "[t]he Accused Member shall be provided a copy of the Investigative Committee's reports and written statements made by the complainant."

70.     In the May 21 Letter, Briggs was advised that SAMS® rules prohibited him from retaining an attorney to represent him at the hearing, and from recording or transcribing the hearing in any manner.

71.      Briggs wrote to SAMS® ahead of the hearing to ask that the "no attorney" rule be waived.  He was denied.

72.     Briggs further requested that the hearing be held mid-morning or later, so that he could fly in and out of Baltimore the same day.  He was denied, and told that the hearing would occur first thing in the morning.  As a result, Briggs had to fly in the night before, miss most of an additional day of work, and pay for a night's stay in a hotel.

73.     The May 21 Letter failed to advise Briggs that he could submit written materials in his defense prior to the hearing.

74.     Nevertheless, Briggs provided supporting materials before the hearing, including emails, and an affidavit from Hirschberg conclusively establishing that he knew the survey was not final when he submitted it to Boat/U.S.

75.     These materials proved to SAMS® that Boat/U.S.'s chief complaint – that Briggs had "submitted a final draft [of the Hirschberg survey] to the owner with no indication that he never went aboard the vessel" – was inaccurate.

76.     When Briggs arrived for the hearing, he was told that not only was recording or transcription prohibited, he was not permitted to take any notes during the proceedings.

77.     No Boat/U.S. representatives attended, the SAMS® Board of Directors put up no witnesses against Mr. Briggs, and Briggs was not provided with the "Investigative Committee reports" as required by SAMS® Termination Policy.

78.     The Board neither referenced, nor indicated that they had reviewed the materials Briggs had provided them, and it failed to state which rules from the SAMS® "Code of Ethics" Briggs had allegedly violated.

79.     Instead of presenting witnesses, or otherwise explaining why it was disregarding both Briggs's and Hirschberg's accounts, the Board commented extensively on supposed grammatical and formatting errors in a letter Briggs had sent the Board on May 12 to explain the relevant events.

80.     Briggs was told he would receive the Board's decision by the end of June.

81.     On or about July 2, 2012, Briggs received a letter from Stuart McLea, SAMS® Vice President, stating nothing more than that "the Board decision was not favorable to your appeal and your membership with SAMS® has been terminated."

82.     The letter failed to state what the vote on the termination had been, failed to provide any findings of the Board as to Briggs's putative misconduct, failed to state under what Rules of Practice or Policies the Board had rendered its decision, failed to provide "Investigation Committee" reports or any other documents concerning the incident, and failed to otherwise identify any grounds for the termination.

83.     All of these actions or inactions were either in direct violation of SAMS®' own Rules of Practice or Policies, or were violations of Briggs's fundamental due process, fair process/procedure, and other common law and statutory rights.

84.     All of these actions or inactions were the result of a conspiracy between Boat/U.S. and SAMS® to strip Briggs of his SAMS® membership and ability to practice as a marine surveyor and in related fields.

85.     All of these actions or inactions were taken by Boat/U.S. and SAMS® with the knowledge and understanding that they would destroy Briggs's business relationships with clients for whom he had worked in the past, with clients for whom he was currently engaged in work, and for clients who would call on him to perform work for him in the future.

86.     All of these actions and inactions were undertaken by Boat/U.S. and SAMS based on improper means and motive – by stating falsehoods against him, destroying his professional reputation, stripping him of his professional accreditation and credibility, precluding him from further working in the marine surveyor and related

fields, and removing competition in such fields in the New England region for SAMS®
Board members Joseph Lobley and George Gallup.

87.     Such actions have resulted in irreparable, ongoing, future, pecuniary and
other harm to Mr. Briggs, which may not be fully-compensated through monetary
recovery.

88.     If he is not immediately reinstated as a member of SAMS and if Boat/U.S.
is not compelled to resume accepting his marine surveys as before, Briggs will incur
irreparable harm to reputation and business, which cannot be fully remedied through
monetary relief.

### FIRST CLAIM FOR RELIEF
**(Violation of Statutory and Common Law Right to
Due Process/Fair Procedure - SAMS®)**

89.     Briggs re-alleges and incorporates herein, as if fully set forth, the
preceding paragraphs of this Complaint.

90.     SAMS®, Inc. is a Florida not for profit corporation organized and existing
under Fl. Stat. Chapter 617.

91.     Under Fl. Stat. §617.0607(1), governing such corporations, a member of a
non-profit corporation may not be expelled or suspended, and a membership in the
corporation may not be terminated or suspended, except pursuant to a procedure that is
fair and reasonable and is carried out in good faith.

92.     Under Florida, Massachusetts, and Federal common law, professional
organizations and accrediting agencies such as SAMS® have a common law duty to
employ fair procedures when making decisions affecting their members.

93.     The substantive and procedural rules established by such organizations for
making membership decisions must be fundamentally fair, they must follow and abide by

such rules in the process of rendering such decisions, and the decisions themselves must

not be arbitrary, capricious or unreasonable, and the tribunal or body making the

decisions must be impartial and unbiased.

94.     As more fully described above, SAMS®'s actions in suspending, and then

terminating, Briggs's membership and accreditation violated every one of these tenets.

95.     As more fully described above, the rules themselves established by

SAMS® with respect to suspension and termination of a member, and its other Rules of

Practice, violated Briggs's due process, fair procedure, and other statutory and common

law rights, by (without limitation):

> a.     Failing to require that an accused member be specifically apprised of the Rules of Practice he has allegedly violated before any suspension may occur;
>
> b.     Failing to require that the Board of Directors receive and consider Briggs's explanation of events before invoking the suspension;
>
> c.     Failing to require that actual witnesses of the alleged misconduct – or even sworn, or notarized written statements – be presented at the "appeal" hearing to decide Briggs's membership fate;
>
> d.     Prohibiting Briggs from representation by counsel at the appeal hearing;
>
> e.     Prohibiting recordation of the appeal hearing by any means;
>
> f.     Failing to require that the Board of Directors set forth written factual findings, identify the Rules the member has purportedly violated, and otherwise justify its final decision on suspension/termination of a member following the "appeal" hearing; and
>
> g.     Failing to require the recusal of Board of Directors members, such as Joseph Lobley, George Gallup, and Paul Logue, who have a defined relationship with a complainant such as Boat/U.S., who stand to gain financially (by pleasing Boat/U.S., and eliminating Briggs as a competitor) through suspension/termination action in accordance with a complainant's wishes, or who otherwise have a

conflict of interest creating even the potential for the appearance of impropriety or bias in such a decision.

96.     SAMS® further violated Mr. Briggs's statutory and common law rights, by failing to follow even its own flawed policies, by (without limitation):

   a.     Suspending Mr. Briggs without receipt of a "well documented grievance" and "formal written complaint;"

   b.     Failing to provide Mr. Briggs – at any point in the process – a copy of the "Investigative Committee" reports, as required in its Termination Policy, and elsewhere; and

   c.     Prohibiting Mr. Briggs from even taking notes during his "appeal" hearing.

97.     SAMS®'s suspension and termination decisions were further arbitrary, capricious, and inherently unfair, because they were either made without any consideration of the accounts of Briggs, Hirschberg, or other third parties, or were directly in conflict with the evidence placed before the SAMS® Board of Directors.

98.     Prior to the May 4 suspension, SAMS® had neither sought, nor received, Mr. Briggs's account of relevant events.

99.     By the time of SAMS®'s termination decision, on the other hand, Briggs had provided it the Hirschberg affidavit, his own written account of circumstances surrounding the Draft Survey, and contemporaneous e-mails to and from Hirschberg.

100.     All of these materials definitively established that Boat/U.S.'s central allegation – that Briggs had submitted the Draft Survey to Hirschberg without advising him that it was incomplete, and that he had not yet gotten on the boat – was untrue.

101.     Either without considering this evidence, or in direct contravention of it, SAMS® terminated Mr. Briggs, presumably (though without ever stating why) based on this ground.

102.   These decisions were manifestly arbitrary, capricious, in direct contravention of the available evidence, unreasonable, unfair, and unlawful.

103.   As a proximate and foreseeable cause of such actions and decisions, Mr. Briggs has suffered, and will suffer, reputational, pecuniary and other harm, in an amount to be proven at trial.

104.   If not immediately reinstated through injunction (as sought in the Prayer for Relief, *infra*), Briggs will suffer irreparable harm to reputation, professional prospects, standing in the marine industry and his own community, and will be unable to pay his debts as they come due prior to the completion of this litigation.

### SECOND CLAIM FOR RELIEF
#### (Defamation – Libel/Slander – Boat/U.S.)

105.   Briggs realleges and incorporates herein, as if fully set forth, all of the preceding paragraphs of this Complaint.

106.   As more fully set forth above, Boat/U.S. published defamatory statements concerning Mr. Briggs by disparaging his work and character to Hirschberg and SAMS® orally prior to the May 4, 2012 suspension, and in writing to SAMS® in its May 9, 2012 letter.  See **Exh. 7** to Briggs Aff.

107.   Such defamatory statements – including (without limitation) that Boat/U.S. had had issues with Mr. Briggs's past work; that he had provided his survey to his client without stating that he had not been on the boat; and that his providing the Draft Survey was a "misrepresentation," were materially false statements of fact.

108.   Bruce Spahr/Boat/U.S. made these materially false statements of fact with intentional, reckless, or at least negligent disregard for their truth or falsity, because both Hirschberg and Briggs had by then advised them that the statements were not true, and

because the Draft Survey had none of the hallmarks of a "final survey" (i.e., not on letterhead, unsigned, sent by e-mail).

109.    As a direct and proximate result of Spahr/Boat/U.S.'s publication of such defamatory statements, SAMS® suspended and then terminated Mr. Briggs's membership in that organization.

110.    As a direct and proximate result of Spahr/Boat/U.S.'s publication of the defamatory statements, Briggs has suffered, and will suffer, damages.

111.    Such damages have included, and will include, the loss of Mr. Briggs's SAMS® accreditation and membership; severe and irreparable damage to Mr. Briggs's reputation and standing as a marine surveyor; Mr. Briggs's loss of ability to earn a living as a marine surveyor or otherwise in the marine industry; the destruction of Mr. Briggs's reputation and standing in his community; and his own emotional distress and other non-economic damages.

112.    Mr. Briggs seeks injunctive, monetary, and other relief of every kind available, in an amount to be established at trial.

**THIRD CLAIM FOR RELIEF**
**(Unfair and Deceptive Trade Practices –**
**Chapter 93A, § 11, et al. - Boat/U.S. and SAMS®)**

113.    Briggs realleges and incorporates herein, as if fully set forth, all of the preceding paragraphs of this Complaint.

114.    Briggs is entitled to the protections provided under Mass. Gen. L. c. 93A, § 11 and related sections.  As the direct and proximate result of the unfair and deceptive acts and practices of Defendants Boat/U.S. and SAMS® as set forth in this Complaint, Briggs has incurred and will incur substantial loss of money and property.

115.    At all relevant times, Defendants have both been involved in trade or commerce:  Boat/U.S. by way of its engagement in the business, *inter alia*, of marine insurance; SAMS® through its accreditation and membership activities, its collection of dues and other fees from members and associate members, and through its Board of Directors' and other members' involvement in the business of marine survey, its relationships with commercial and corporate entities, and its integral part in the business prospects of its members and accreditees.

116.    Defendants' unfair and deceptive acts have arisen and/or occurred primarily in Massachusetts, insofar as, *inter alia*, (i) Defendant SAMS® directed all of its correspondence concerning the Boat/U.S. "complaint" to Daniel Briggs in Massachusetts with the intent that he either act upon it, or forbear to act upon it, in Massachusetts; (ii) Defendant Boat/U.S.'s customer, Hirschberg, his boat, the Changes in Latitude, and Briggs's partial inspection of the boat were located or occurred in Massachusetts; (iii) Briggs prepared and submitted the Draft Survey to Hirschberg in Massachusetts, and Hirschberg submitted the Draft Survey to Boat/U.S. from Massachusetts; (iv) all of Boat/U.S.'s communications with Hirschberg and Briggs were knowingly directed to them in Massachusetts; (v) Boat/U.S. is a corporation registered to do business, and regularly doing business, in Massachusetts; (vi) upon information and belief, George Gallup, a SAMS® Board member, past President, and Massachusetts marine surveyor, participated in SAMS®'s suspension and termination actions while located in Massachusetts; and (vii) all unfair and deceptive actions by SAMS® and Boat/U.S. were taken with the intent, knowledge, and/or understanding that they would damage Mr. Briggs in Massachusetts; and (viii) all harm incurred, and which will be incurred by Mr.

Briggs, will be felt in Massachusetts by Mr. Briggs, who both lives and works year-round in the Commonwealth.

117.     Through various deliberate acts as described in this Complaint, SAMS® has conducted itself with malice and rascality, and in wanton disregard of Mr. Briggs's rights.  This conduct includes (without limitation): (i) the suspension of Mr. Briggs's membership without soliciting or permitting him to submit his account of events, before any of the evidence against him, or even the identity of the rules he allegedly violated, had been provided to him, and long before any "well-documented grievance" or "formal written complaint" was ever submitted to SAMS®; (ii) failing to follow its own rules and procedures in the course of the suspension and termination process, as more fully set forth above; (iii) suspending and terminating Briggs based upon rules that violate principles of fundamental fairness, fair procedure, and due process, as more fully set forth above; (iv) arbitrarily and capriciously terminating Briggs' membership and denying his "appeal" without  considering or crediting either his or Ronald Hirschberg's account of relevant events, and in direct contravention of such accounts; and (v) colluding and conspiring with Boat/U.S. to strip Briggs of his SAMS® membership, and thereby destroy his professional and personal reputation and credentials, and ability to practice as a marine surveyor, or otherwise in the marine industry.

118.     Through various deliberate acts as described in this Complaint, Boat/U.S. has likewise conducted itself with malice and rascality, and in wanton disregard of Mr. Briggs's rights, to wit: (i) orally defaming Mr. Briggs's current and past job performance to Hirschberg and to SAMS® in advising of the "rejection" of the Draft Survey, and in its initial oral "complaint" to Joseph Lobley and the SAMS® Board of Directors; (ii) repeating such defamatory statements in its May 9, 2012 letter to Joseph Lobley (**Exh. 7**

to Briggs Aff.) notwithstanding its knowledge – based on the accounts of Hirschberg and Briggs – directly to the contrary, including (without limitation) that Briggs had never advised his client that he had been unable to inspect the entire boat and that the Draft Survey was not "final", that Briggs's past performance as a marine surveyor had been substandard, and that Briggs had ever "misrepresented" to Hirschberg or to Boat/U.S. that the Draft Survey was complete; (iii) failing, at any time, to withdraw this "complaint" or amend its account, after further conversations with Briggs and Hirschberg that provided it further evidence that its understanding of relevant events was inaccurate; and (iv) its "rejection" of Briggs's (a surveyor not on its 'approved' list) survey based on purported "mistakes" in the text, while accepting without objection a subsequent survey, with substantial and significant errors throughout, from Jeffrey Gonsalves, a surveyor included on its 'approved' surveyor list.

119.    Defendants, by the conduct set forth above, have violated Mass. Gen. L. c. 93A, §11 and related sections, to the proximate and reasonably foreseeable detriment and damage of Briggs, in an amount of at least $1,000,000.

120.    In remedy, Mr. Briggs seeks an award of all damages recoverable at law, including (without limitation) compensatory, consequential, incidental, multiple, punitive, and all other forms of damages, plus pre- and post-judgment interest, attorney's fees and costs, all in an amount to be proven at trial.

121.    Because Defendants' conduct has been wanton, willful, and malicious, Briggs seeks double to treble damages under the applicable sections of Mass. Gen. L., c. 93A.

122.    Mr. Briggs further seeks an injunction compelling SAMS® to reinstate Mr. Briggs's membership and compelling Boat/U.S. to reinstate Mr. Briggs as an

approved surveyor, and such other and further related actions deemed appropriate and necessary, as any legal remedy will be inadequate to fully redress Defendants' violations.

## FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy)

123.    Briggs realleges and incorporates herein, as if fully set forth, all of the preceding paragraphs of this Complaint.

124.    By way of the misconduct more fully set forth above, Boat/U.S. and SAMS®, either expressly or otherwise, took concerted action to intentionally, recklessly, and with wanton disregard for Mr. Briggs's rights, cause the destruction of his professional and personal reputation, the loss of his ability to earn a living as a marine surveyor and in related industries, the loss of his professional accreditation and SAMS® membership, and related and resulting economic, emotional, and other non-economic harm.

125.    As a result of such concerted action, SAMS® and Boat/U.S. have jointly, and by common design, caused harm to Mr. Briggs.

126.    In remedy, Mr. Briggs seeks an award of all damages recoverable at law, including (without limitation) compensatory, consequential, incidental, multiple, punitive, and all other forms, plus pre- and post-judgment interest, attorney's fees and costs, all in an amount to be proven at trial.

127.    Mr. Briggs further seeks injunctive relief as a remedy for such civil conspiracy, insofar Mr. Briggs's damages cannot be adequately redressed by a monetary award.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel C. Briggs respectfully requests that the

Court award him the following relief:

A.      A Temporary Restraining Order ("TRO"), Preliminary and Permanent

Injunction, in the forms set forth in the (Proposed) Orders filed herewith, ordering,

adjudging, and preliminarily enjoining Defendants as follows:

1.      From the date of the entry of the (Proposed) Order, until further Order of
this Court specifically vacating, amending, or otherwise modifying this Order, Defendant
SAMS® shall:

a.      Immediately reinstate Mr. Briggs as a member of SAMS® in good
standing, retroactive to the date of his suspension, with all of the rights and
privileges he enjoyed prior to such time.

b.      Write and send to Mr. Briggs, with a copy to remain in SAMS®
administrative file, a letter stating, in substance, that the prior decisions
suspending and terminating Mr. Briggs were unfair, were taken without due
consideration of the relevant facts, and that such suspension and termination
should be deemed a mistake, and null and void from the time they occurred.

2.      From the date of the entry of the (Proposed) Order, until further Order of
this Court specifically vacating, amending, or otherwise modifying this Order, Defendant
Boat/U.S. shall:

a.      Immediately reinstate Mr. Briggs as an approved surveyor, and/or
otherwise resume accepting marine surveys from Mr. Briggs as it had prior to the
submission to it of the Hirschberg Draft Survey.

b.      Write and send to Mr. Briggs and to SAMS®, with a copy to remain in
Boat/U.S.'s administrative file, a letter stating, in substance, that its prior
"complaint" to SAMS® concerning Mr. Briggs was in error, that it was submitted
without consideration of all relevant facts, that such "complaint" is withdrawn as
if never sent in the first place, and that Mr. Briggs's work, to its knowledge, has
always been exemplary and of high quality.

c.      Place Mr. Briggs on its on-line and all other lists of marine surveyors
whom it "approves" or to whom it refers potential or current customers.

B.      Award Plaintiff Daniel C. Briggs his damages jointly and severally against

Defendants (including without limitation compensatory, consequential, exemplary,

punitive, multiple, liquidated and/or double to treble damages), interest, attorney's fees,

costs and expenses incurred as a result of the conduct alleged in this Complaint;

C.      Payment of Briggs's attorney's fees and costs pursuant to

applicable legal or equitable authority;

D.      Statutory interest at the maximum amount permitted by law;

E.      A jury trial on all claims so triable; and

F.      Such other and further relief as the Court deems just and proper.

PLAINTIFF DANIEL C. BRIGGS,

By his attorneys,


/s/ Matthew J. Ginsburg
Matthew J. Ginsburg (BBO No. 641089)
Rickey G. Glover (BBO No. 677427)
Date:  September 28, 2012      GILBERT & RENTON LLC
344 North Main Street
Andover, MA 01810
Telephone: (978) 475-7580
Facsimile: (978) 475-1881